IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY PLUHAR, | ) | Case No.  1:16 CV 2051 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BRIAN COOK, Warden, | ) | THOMAS M. PARKER |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.    Introduction

Petitioner, Timothy Pluhar, seeks a writ of habeas corpus under 28 U.S.C. § 2254, based on his challenge to the constitutionality of his convictions and sentences in *State v. Pluhar*, Case No. CR-14-584753-A (Cuyahoga County, Ohio).  ECF Docs. 1, 11.  Warden Brian Cook,[1] the original respondent, filed a return of writ.  ECF Doc. No. 22.  And Pluhar has filed a traverse. ECF Doc. No. 24.

The matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Pluhar's petition or other case-dispositive motions.  Because all of Pluhar's claims fail as a matter of law, I recommend that the Court deny Pluhar's petition in its entirety.

---

[1]  Brian Cook is the Warden of the South Eastern Correctional Complex in Lancaster, Ohio, where Pluhar was incarcerated at the time he filed his habeas petition.  Subsequently, Pluhar was transferred to the North Central Correctional Complex in Marion, Ohio, where Neil Turner serves as warden.  ECF Doc. No. 19 at Page ID# 374.

II.    **Factual Background**

The Ohio Court of Appeals set forth the following facts relating to Pluhar's convictions:

{¶ 2}   In the late 1990s, appellant had sexual contact with three women incapable of consenting to this activity.  After a prior indictment was dismissed, a 13–count indictment was issued on April 25, 2014, charging appellant with various crimes including rape, sexual battery, kidnapping, tampering with evidence, tampering with records, and falsification.  The indictment alleged the prohibited acts occurred between June 20, 1998, and August 4, 1999.  Counsel was assigned, and discovery was had.

{¶ 3}   On August 6, 2014, appellant [pleaded] guilty to one count of rape, a violation of R.C. 2907.02(A)(1)(c); one count of tampering with evidence, a violation of R.C. 2921.12(A)(2); and two counts of sexual battery, violations of R.C. 2907.03(A)(3).  As part of a plea deal, the state amended the charges to delete sexually violent predator specifications and dismiss two counts of rape, one count of sexual battery, one count of tampering with records, one count of falsification, and three counts of kidnapping.  Appellant was referred to the court psychiatric clinic for evaluation and to the probation department for a presentence investigation report.

{¶ 4}   On September 8, 2014, the trial court conducted appellant's sentencing hearing.  After hearing from the state, appellant and his attorney, and one of the victims and a member of her family, the court imposed an aggregate 18–year sentence: a ten-year sentence for rape, a three-year sentence for tampering with evidence, and two 48–month sentences for sexual battery.  The court ordered that the sentences for sexual battery be served consecutive to the sentence for rape.  The court also imposed a $5,000 fine and costs.  The trial court made findings on the record necessary to impose consecutive sentences and incorporated the language from the statute in the journal entry.  The court also informed appellant of post-release control and incorporated the notification in the journal entry.  Finally, the court conducted a sexual-offender-classification hearing.  After hearing from the parties and reviewing the court psychiatric report, the court classified appellant as a sexual predator.

{¶ 38} Appellant's guilty pleas were made knowingly because the court was not required to inform appellant about civil, collateral consequences such as sexual reporting requirements under Megan's Law prior to accepting those pleas.  Appellant's 18-year combined sentence is also not clearly and convincingly

2

contrary to law.  Finally, the trial court did not err when it classified appellant as a sexual predator.

*State v. Pluhar*, Eighth Dist. No. 102012, 2015-Ohio-3344, 2015 WL 4979358, ¶¶ 2-4, 38.

These facts "shall be presumed to be correct," unless Pluhar rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.    State Court History

### A.    Trial Court Conviction

On April 23, 2014, a Cuyahoga County grand jury indicted Pluhar on thirteen counts, ten of which included specifications:[2]

| Count | Charge | Ohio Rev. Code | Offense Date | Specification(s) |
|---|---|---|---|---|
| 1 | Rape – F1 | 2907.02(A)(1)(c) | 6-20-1998 | Sexually violent predator – 2941.148(A) |
| 2 | Sexual Battery – F3 | 2907.03(A)(2) | 6-20-1998 | Sexually violent predator – 2941.148(A) |
| 3 | Sexual Battery – F3 | 2907.03(A)(3) | 6-20-1998 | Sexually violent predator – 2941.148(A) |
| 4 | Kidnapping – F1 | 2905.01(A)(4) | 6-20-1998 | Sexual motivation – 2941.147(A) |
| 5 | Tampering w/ Evidence – F3 | 2921.12(A)(2) | 6-20-1998 | |
| 6 | Tampering w/ Records – F5 | 2913.42(A)(1) | 6-20-1998 | |
| 7 | Falsification – M1 | 2921.13(A)(2) | 6-20-1998 | |
| 8 | Rape – F1 | 2907.02(A)(2) | 2-21-1999 | Sexually violent predator – 2941.148(A) |
| 9 | Sexual Battery – F3 | 2907.03(A)(3) | 2-21-1999 | Sexually violent predator – 2941.148(A) |
| 10 | Kidnapping – F1 | 2905.01(A)(4) | 2-21-1999 | Sexually violent predator – 2941.148(A) Sexual motivation – 2941.147(A) |
| 11 | Rape – F1 | 2907.02(A)(2) | 8-4-1999 | Sexually violent predator – 2941.148(A) |
| 12 | Sexual Battery – F3 | 2907.03(A)(3) | 8-4-1999 | Sexually violent predator – 2941.148(A) |
| 13 | Kidnapping – F1 | 2905.01(A)(4) | 8-4-1999 | Sexually violent predator – 2941.148(A) Sexual motivation – 2941.147(A) |

On August 6, 2014, Pluhar pleaded guilty to Counts 1 (Rape), 5 (Evidence Tampering), 9 (Sexual Battery), and 12 (Sexual Battery).  The rape and battery counts were amended by the deletion of the sexually violent predator specifications.  The court found Pluhar "knowingly, voluntarily and with full understanding of his rights entered his change of plea."  ECF Doc. 15-2, Page ID# 295-296.  The court found Pluhar guilty of the charges to which he had entered his

---

[2] ECF Doc. 16-1, Page ID# 351-356.

pleas and dismissed the balance of the indictment upon the motion of the prosecutor, in accordance with the plea agreement.  ECF Doc. 16-2, Page ID# 358.

On September 8, 2014 the trial court conducted a sentencing hearing.  ECF Doc.15-1, Page ID# 95.  The trial judge sentenced Pluhar to serve a mandatory ten year prison term on the amended Count 1 rape charge; three years on the Count 5 evidence tampering charge; and forty-eight months each on the Count 9 and Count 12 sexual battery charges.  Counts 1 and 5 were ordered to be served concurrently to each other.  Counts Nine and Twelve were ordered to be served consecutively to each other and consecutive to Counts One and Five.  In the aggregate, Pluhar's sentence was eighteen years.  Pluhar was adjudged a sexual predator, given notice of his sexual offender reporting obligations, and he was advised of his obligation to serve five years of mandatory post-release control.  *Id.*  The trial court notified Pluhar of his appeal rights and appointed appellate counsel.  *Id.* at Page ID# 96.

### B.  Direct Appeal

Pluhar, by his counsel, filed a notice of appeal on October 5, 2014.  ECF Doc. 15-1, Page ID# 97.  He asserted five Assignments of Error and then listed "Issues Raised by Each Assignment of Error," which he also enumerated as "Assignments of Error."  Although this needlessly duplicated the matters presented, I will, as Warden Cook has done, list what Pluhar asserted, relabeling the duplicated assignments of error as "issues":

> **Assignment of Error I**
> APPELLANT'S PLEA OF GUILT IS NOT KNOWING AND IN VIOLATION OF CRIM.R.11(C), WHEN, BEFORE ACCEPTING IT, THE TRIAL COURT FAILED TO INFORM APPELLANT ABOUT CONSEQUENCES OF VIOLATING SEX OFFENDER REGISTRATION RULES
> **[Issue] I**:
> 1) Was Appellant's plea of guilt knowing and not in violation of Crim. R. 11(C), if the trial court failed to inform him about consequences of violating sex offender registration rules?

**Assignment or Error II:**
THE MAXIMUM SENTENCE IMPOSED BY THE TRIAL COURT FOR THE RAPE
CONVICTION IS NOT SUPPORTED BY THE RECORD AND IS CONTRARY TO
THE LAW
**[Issue] II**:
  1) Is the trial court's finding that Appellant's conduct is more serious than conduct
     normally constituting the offense supported by the record and contrary to the law?
     a. Are the trial court's findings that the victims suffered serious psychological
        and physical harm supported by the record?
     b. Is the trial court's failure to consider that Appellant's conduct did not cause
        any physical harm to the victims contrary to the law?
     c. Is the trial court's consideration of Appellant's tampering with evidence as a
        factor to enhance the penalty for the Appellant's rape conviction an abuse of
        discretion and contrary to law?
  2) Is the trial court's finding that Appellant is likely to reoffend supported by the
     record?
     a. Is the trial court's finding that Appellant demonstrated a pattern of drug or
        alcohol abuse that is related to the offense, and that Appellant refuses to
        acknowledge this pattern of abuse or refuses treatment for the drug or alcohol
        at the time of the sentencing supported by the record and contrary to law.
     b. Is the trial court's consideration of the Appellant's lack of remorse as a factor
        showing that he is likely to reoffend an abuse of discretion and contrary to
        law?
     c. Did the trial court misapply the 2929.12(D)(1),(2), and (3) factors and abuse
        discretion in finding that Appellant was likely to reoffend when the record
        demonstrates that Appellant has taken steps to rehabilitate himself?

**Assignment of Error III**:
THE TRIAL COURT ERRED IN IMPOSING A NEAR MAXIMUM SENTENCE ON
EACH COUNT OF SEXUAL BATTERY.
**[Issue] III**:
  1) Did the trial court err in imposing a near maximum sentence on each count of
     sexual battery?

**Assignment of Error IV**:
THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES FOR
THE RAPE AND SEXUAL BATTERY CONVICTIONS.
**[Issue] IV**:
  1) Did the trial court err by imposing consecutive sentences for the rape and sexual
     battery convictions?

**Assignment of Error V**:
THE TRIAL COURT'S SPECIFICATION OF APPELLANT AS SEXUAL
PREDATOR IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
**[Issue] [V]**:

1) Is the trial court's specification of Appellant as sexual predator against the manifest weight of the evidence?

ECF Doc. 15-1, Page ID# 106-107.  The state filed a brief.  ECF Doc. 15-1, Page ID# 144.  And Pluhar filed a reply brief.  ECF Doc. 15-1, Page ID# 175.  On August 20, 2015 the Ohio Court of Appeals affirmed Pluhar's convictions.

Notably, for purposes of analyzing the instant petitions, Pluhar cited four decisions of the United States Supreme Court to the Ohio Court of Appeals.  He relied on *United States v. Halper*[3] (which, in turn, relied on *North Carolina v. Pearce*[4]) and *Ohio v. Johnson*[5] to support his argument that when the trial court considered Pluhar's evidence tampering conduct – lying about who raped one of his victims – in reaching a decision to impose a maximum sentence for rape, it violated the Double Jeopardy Clause and imposed "cruel and unusual punishment" because he was separately sentenced on the evidence tampering charge.  ECF Doc. 15-1, Page ID# 124.  In addition, Pluhar cited *North Carolina v. Alford*[6] in regard to his argument that a person who maintains his innocence at the time of sentencing should not have his "lack of remorse" provide a basis for concluding he is likely to reoffend.  Pluhar did "not argue that his guilty plea was taken as an *Alford* plea.  Nevertheless, [he] believe[d] that the circumstances of his plea resemble it."  ECF Doc. 15-1, Page ID# 128.  Pluhar did not advance any constitutional law argument in regard to the fact that he maintained his innocence at the time of his sentencing.

On October 2, 2015, Pluhar filed a *pro se* notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court.[7]  ECF Doc. 15-1, Page ID# 208, 210-

---

[3] 490 U.S. 435, 440 (1989)
[4] 395 U.S. 711, 717 (1969)
[5] 467 U.S. 493 (1984)
[6] 400 U.S. 25 (1970)
[7] Warden Cook erroneously characterized this as a counseled Supreme Court appeal.  ECF Doc. 22, Page ID# 386.

241.  Pluhar's memorandum essentially asserted the same five propositions of law he had

assigned as error in the Ohio Court of Appeals:

> I.   Can appellant knowingly and intelligently enter a guilty plea without knowledge of sex offender registration rules.
>
> II.  Can a maximum sentence be imposed when not supported by record and contrary to law.
>
> III. Did the trial court err by imposing a near maximum sentence on each count of sexual battery.
>
> IV.  Did the trial court err by imposing consecutive sentences for rape and sexual battery.
>
> V.   Is the trial court's specification of sexual predator against the manifest weight of the evidence.

Pluhar's memorandum cited no provision of the United States Constitution and no federal

court decisions at all.  He made no argument that his convictions or sentences violated his

federal constitutional rights.

The State of Ohio filed a notice of waiver of its right to file a response

memorandum.  ECF Doc. 15-1, Page ID# 242.  The Ohio Supreme Court declined to

accept jurisdiction of the appeal on December 2, 2015.  ECF Doc. 15-1, Page ID# 243.

## C.    Application to Reopen Direct Appeal

Meanwhile, on October 20, 2015, Pluhar filed a *pro se* application to reopen his direct

appeal under Ohio Appellate Rule 26(B).  ECF Doc. No. 15-1, Page ID# 244-250.  Pluhar

asserted that he was denied the effective assistance of appellate counsel for failing to raise on

direct appeal the following two "additional" assignments of error:

> 1.    Trial counsel was ineffective for failure to discover the charges exceeded the statute of limitations that existed at the time of the alleged action.
>
> 2.    The felonies charged exceeded the statute of limitations as they existed at the time of the alleged action.

7

ECF Doc. No. 15-1 at Page ID# 245-246 (capitalization altered).  The State filed a brief

opposing Pluhar's Rule 26(B) application.  ECF Doc. 15-1, Page ID# 251.  The Ohio

Court of Appeals denied the application by journal entry dated April 6, 2016.  ECF Doc.

15-1, Page ID# 255.  Pluhar apparently did not appeal the decision to the Ohio Supreme

Court.  *See* http://www.supremecourt.ohio.gov/Clerk/ecms/#/search.

## IV.    Federal Habeas Corpus Petition

On July 11, 2016, Pluhar filed his *pro se* petition for habeas corpus relief in this court.

ECF Doc. 1.  In it, Pluhar asserted seven grounds for relief:

**GROUND ONE**: Plea was not knowingly agree (sic) because the court failed to inform
defendant consequences of violating sex offender registration rules would result in additional
felony charge.

**Supporting Facts**: Crim.R.11(C) requires a trial court, before accepting a defendant's plea,
to explain the nature of the charge and the maximum penalty involved.  The trial court did
not advise defendant that his plea of guilt will expose him to a new felony for failure to
register.

**GROUND TWO**: The maximum sentence imposed by the trial court is not supported by the
record and is contrary to law.

**Supporting Facts**: With respect to defendant's factors indicating his conduct was less
serious, the court found he suffered from alcohol abuse disorder.  One victim alleged
psychological harm, the other 2 did not; no victim suffered physical harm, findings which
render the sentence contrary to law: No factors indicating defendant's conduct more serious
than normal in such an offense; additionally he has factors indicating he is less likely to
reoffend.

**GROUND THREE**: The trial court erred by imposing a near maximum sentence on each count
of sexual battery.

**Supporting Facts**: No evidence to substantiate that "consecutive sentences are not
disproportionate to the seriousness of the offenders (sic) conduct and a danger to the public."
Court ran rape and tampering with evidence concurrently, by this the court acknowledged
there was no need for consecutive sentencing.  Court failed to find statutory factors that apply
in this decision.  Record demonstrates defendant has led a law-abiding life for some time,
and has been continuously employed, and in a long-term relationship.

**GROUND FOUR**: The trial court erred by imposing consecutive sentences for rape and sexual
battery.

**Supporting Facts**: The court failed to establish the requirements necessary to impose consecutive sentence.  No evidence the sexual offenses were committed as part of one or more courses of conduct nor was the harm caused so great or unusual that no single prison term would suffice.

**GROUND FIVE**: The trial court's specification as sexual predator is against the manifest weight of the evidence.

**Supporting Facts**: A sexual predator is likely to engage in one or more future sexually oriented offenses.  All indicators presented before the court indicate this will not happen, and no grounds to find the defendant demonstrated a pattern of sexual conduct.

**GROUND SIX**: Trial counsel was ineffective for failure to discover felony charges exceeded the statute of limitations that existed at the time of the alleged action.

**Supporting Facts**: All actions alleged in this case occurred prior to March 9, 1999, making their presentation beyond Ohio statute of limitations in effect at that time.  One of the alleged victims was already deceased and counsel did not inform defendant that case required a motion for corpus delicti (sic) to proceed.

**GROUND SEVEN**: The felonies charged exceeded the statute of limitations as they existed at the time of the alleged action.

**Supporting Facts**: If the 3 women believed a felony had actually occurred, they had a duty to report it at the time it occurred because they knew rape was a felony.  The State knowingly presented a case they knew exceeded Ohio's statute of limitations.

Pluhar requested leave to amend his petition (ECF Doc. 8) and filed, *pro se*, the amended petition on September 30, 2016.  ECF Doc. 11.  The amended petition effectively superseded the original petition, but because Pluhar kept two of his original grounds (Ground One and Ground Two) and then listed his "new" grounds with the same numbers utilized in his original petition, the court will set them forth:

**AMENDED GROUND 3**: Insufficient indictment supports §2254 actual innocence requirement.

**Supporting Facts Paraphrase**: Pluhar did not truly recite "supporting facts" in regard to this ground for relief.  Instead, he engaged in a narrative critique of the facts omitted from the indictment that he claims – via his use of rhetorical questions – would have demonstrated his innocence had they been included.  For example, he asserted: "The Count 8 rape charge is claimed to be by force of threat of force, yet how can force be alleged when not only did the alleged victim purposely engage in all manner of sexual encounters with this Petitioner before the alleged rape and knowing him to be the one she claimed raped her, continued to pursue him for "partying" and further sexual encounters after the alleged rape?  Why did the

victim claim rape yet continually pursue the Petitioner to perform the same sexual activity in continuing sexual encounters?  Can a woman who is a sex addict claim rape for a condition she, herself, actively pursues?"  Pluhar's narrative critique begins on page 8 of his amended petition and continues to page 11.  ECF Doc. 11, Page ID# 57-60.

**AMENDED GROUND 3**[8]: Violation of Sixth Amendment right to confront a witness against defendant/petitioner.

**Supporting Facts Paraphrase**: Pluhar challenges that the alleged victim in counts 11, 12, and 13 was already deceased, thereby "becoming" a corpus delecti.  He asserted that the court neither entered a "motion for corpus delecti," nor deleted those charges resulting in violation of this Petitioner's Sixth Amendment right to confront that witness against him.  Under the rule of corpus delecti, a prosecutor must establish the corpus delecti with corroborating evidence to secure a conviction, without such evidence of proof, the State cannot convict.

**AMENDED GROUND 4**: The trial court erred by imposing a near maximum sentence on each count of sexual battery and the accompanying sexually violent predator specification.

**Supporting Facts Paraphrase**: Though this is the same ground as asserted in Ground Three of the original petition, here Pluhar essentially asserts his victim requested the sexual activity between the two of them.  And he contends he cannot properly be considered a sexually violent predator when each of his three alleged victims "encouraged, desired and actively pursued their continuing lifestyle of partying."  He states: "a woman that readily spreads [her] legs cannot claim she was raped when her normal course of conduct is to willingly spread her legs in enticement for her personal enjoyment."

**AMENDED GROUND 5**: The trial court erred by imposing consecutive sentences for rape and sexual battery.

**Supporting Facts Paraphrase**: This is the same ground asserted as Ground Four of the original petition, and Pluhar began his statement of supporting facts by re-asserting that the trial court "failed to establish the requirements necessary to impose consecutive sentences, a violation of due process.  There is no evidence the sexual offenses were committed as a part of one or more courses of conduct, nor was any harm caused that was so great or unusual that no single prison term would suffice."  Pluhar continued statement of supporting facts by essentially asserting he was a law abiding citizen until he fell in with the three alleged victims, gave in to their ongoing sexual and partying demands, becoming their "sex toy."  But then "**on his own** corrected his life style and his re-stabilized life has been ongoing for the fifteen years since the alleged actions."  He raised this point to support his contention that the trial court had no basis upon which to conclude he was likely to reoffend or to find that there was a need to protect the public from the risk of future harm.  (Emphasis in original)  ECF Doc. 11, Page ID# 61.

---

[8] The amended petition has two Ground Threes.

**AMENDED GROUND 6**: Trial counsel was ineffective for failure to discover the felony charges exceeded the statute of limitations that existed at the time of the alleged action.

**Supporting Facts Paraphrase**: Pluhar raised the same ground in Ground Six of his original petition.  Here, he asserts his counsel fell below an objective standard of reasonableness for failing to discover that the felony charges were filed beyond the statute of limitations.  He cited *Strickland v. Washington*, 104 S.Ct. 2052 and asserted that, had trial counsel properly presented that claim, the trial court would not have had subject matter jurisdiction, thereby demonstrating prejudice as required by the second *Strickland* prong.  Pluhar also asserted here that his counsel failed to investigate and only ever saw him twice prior to the plea of guilty.  And he noted that his counsel was on vacation during these key times.  He also raised here the same corpus delecti issue asserted in support of his second – or repeated – Amended Ground Three.  ECF Doc. 11, Page ID# 62-63.

**AMENDED GROUND 7**: The felonies charged exceeded the statute of limitations as they existed at the time of the alleged action.

**Supporting Facts Paraphrase**: This ground is the same as Ground Seven in the original petition.  Pluhar gave an extended narrative of why the charges asserted against him were time-barred under Ohio Rev. Code § 2901.13 as it existed at the time of the alleged actions.  He asserted that three of the four counts to which he pleaded guilty were barred.  As to the fourth count to which he pleaded guilty, Pluhar contended the count could not be pursued absent a "motion for corpus delecti" with the case "placed under the doctrine of corpus delecti."  Pluhar pointed out that he challenged these defects in the court of appeals.  Here, he also asserted that the state violated his civil rights by deliberately prosecuting charges that were time-barred.  Pluhar cited *United States v. Lovasco*, 97 S.Ct. 2044 (1977) and *United States v. Marion*, 92 S.Ct. 455 (1971) by citation, not by name.  In doing so, Pluhar asserted there was pre-indictment delay which caused substantial prejudice to his right to a fair trial.  ECF Doc. 11, Page ID# 63, 64.

Initially, Warden Cook moved to dismiss the petition.  ECF Doc. 15.  The respondent contended all of Pluhar's grounds for relief were subject to dismissal because (1) he entered a voluntary guilty plea, thereby waiving any constitutional issue allegedly arising prior to the entry of the plea; (2) because he never sought to challenge the voluntary character of his guilty plea on direct appeal, thereby failing to exhaust the sole available due process issue pertaining to the plea; and (3) he raised only non-cognizable issues relating to the application of state sentencing law.   After briefing on the dismissal motion closed, on May 4, 2017, the court dismissed the motion without prejudice, finding that the issues raised in respondent's motion could be more fairly addressed in the context of the adjudication of the entire petition.

11

On May 10, 2017 the warden filed a return of writ.  ECF Doc. 22.  And on December 11, 2017 Pluhar filed his traverse.  ECF Doc. 24.  The petitions are ripe for disposition.

## V.     Applicable Habeas Corpus Legal Principles

### A.     AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs Pluhar's petition because he filed it after the Act's 1996 effective date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  The Act "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Id*.

Initially, it must be determined, with respect to each of a petitioner's grounds for relief, whether he is "in custody" pursuant a judgment of a state court in violation of his federal constitutional rights.  Absent a custodial order, federal courts lack jurisdiction to act on claims for habeas relief.  28 U.S.C. § 2254 provides:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

If a petitioner is not "in custody" as a result of the state court action he challenges, that action is beyond the scope of habeas relief.  *Leslie v. Randle*, 296 F.3d 518 (6th Cir. 2002).  In *Leslie*, the Sixth Circuit denied a petitioner's right to challenge his Ohio sex

offender classification because he was not "in custody" as a result of any of the requirements imposed upon him by being classified as a sexual predator, even though he was in prison on a rape sentence.  *Id.* at 523.

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  "When a federal claim has been presented to a state court and the state court has denied relief, it is presumed that the claim was adjudicated "on the merits" in the absence of any indication or state law procedural principles to the contrary."  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  This is true even when the state court provided little or no reasoning at all for its decision.  *Id.*

 "Clearly established federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the United States Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is

13

sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003).  The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence."  *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can only be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims.  The Court has admonished that a reviewing court may not

14

"treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).  Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.  This is a very high standard, which the Court readily acknowledges:  "If this standard is difficult to meet, that is because it is meant to be." *Id*. at 102.

### B.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition."

*Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available.  *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment.  *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law.  *Id*. at 732-33.  To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied.  *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).[9]

---

[9] In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule.  It is:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.  Second, the federal court must determine whether the state courts actually enforced the state procedural sanction -- that is, whether the state courts actually based their decisions on the procedural rule.  Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim.  Fourth, if the federal court

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim.  *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review.  *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis.  *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, a "'petitioner must present his claim to the state courts

---

answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.
*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[10]

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### C. Cognizability

To the extent that claims asserted in a federal habeas petition allege purely state-law violations, they are not cognizable on federal habeas review and must be dismissed on that basis unless the state court ruling violates a fundamental federal constitutional right. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*,

---

[10] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's:

"(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Williams*, 460 F.3d at 806 (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

However, state-court rulings on issues of state law may rise to the level of due process violations if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised when "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Courts, therefore, "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

19

### D.      Waiver of Pre-Guilty Plea Constitutional Violations

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'"  *United States v. Corp*, 668 F.3d 379, 384 (6th Cir.2012) (internal quotations omitted).  This is so because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  "Thus, after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself."  *Werth v. Bell,* 692 F.3d 486 (6th Cir. 2012).  "[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'"  *Ruelas v. Wolfenbarger,* 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  The validity of the plea must be determined from the "totality of the circumstances."  *Abdus-Samad v. Bell,* 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady,* 397 U.S. 747).

When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding."  *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993).  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L. Ed. 2d 136 (1977).  The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent.  *Garcia,* 991 F.2d at 326-327; see U.S.C. § 2254

(e)(1).  Under *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), and *Dunn v. Simmons*, 877 F.2d 1275 (6th Cir.1989), the petitioner must overcome a heavy burden if a federal habeas court is to overturn a state court finding that he made a knowing and voluntary plea.

## VI.    Analysis

For ease of the Court's review, I will address Pluhar's grounds for relief in an order different than presented in his petitions.  I will treat some of the grounds in groups because they can be analyzed using the same legal principles.

### A.    Ground Five

Pluhar seeks habeas relief under Ground Five of the original petition based on his contention that the trial court's classification of Pluhar as s sexual predator was against the manifest weight of the evidence.  This ground fails as a matter of law because Pluhar is not in custody from any requirement created by the trial court's sexual predator classification order. *Leslie v. Randle*, 296 F.3d 518 (6th Cir. 2002).  *See* discussion at page 11-12 *supra.*  Absent custody, the court does not have jurisdiction under AEDPA to consider this ground.  More fundamentally, a petitioner may not present a manifest weight of the evidence challenge in habeas proceedings because it raises no a claim that a petitioner is being held in custody as a result of his federal constitutional rights.  *Tibbs v. Florida*, 457 U.S. 31, 45 (1982).  It is well-settled that claims regarding the manifest weight of the evidence are state law-based claims that cannot be reviewed in a federal habeas proceeding.  *See, e.g., Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983) (Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those convicted without sufficient proof

to allow a finding of guilty beyond a reasonable doubt).  I recommend Ground Five be dismissed for lack of jurisdiction and because it raises only a non-cognizable claim.

> ### B.      Amended Petition Duplicate Ground Threes

As noted above, Pluhar's amended petition contains two grounds for relief denominated as Ground Three.  In the first of them, he asserts that the indictment was "insufficient," and argues a more "sufficient" indictment would have included facts that demonstrated his actual innocence of the charges.[11]  In the duplicate amended ground three, Pluhar asserts his Sixth Amendment right of confrontation was violated because he was unable to confront and cross examine one of his three victims because she had died by the time the case came to court.

Pluhar cannot pursue these claims here because he did not exhaust his state court remedies for either claim as required by AEDPA.  *See* 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  Pluhar raised neither of these grounds in his direct appeal or his application to reopen the direct appeal.  Further, he did not assert them in his notice of appeal to the Ohio Supreme Court following his direct appeal.  Because his opportunity to pursue state court remedies on these claims no longer exists, Pluhar procedurally defaulted the claims. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(*see* pp. 15-17, *supra*, for further discussion of applicable legal principles).  It is unnecessary to make a full procedural default/exhaustion analysis – including a cause and prejudice determination – in regard to the

---

[11] To the extent Pluhar complains that the indictment was defective, this claim is not cognizable on federal habeas review.  It is well settled that there is no federal constitutional right to an indictment in state criminal proceedings.  *See Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)(citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)); *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002)(citing *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986) ("The indictment here had sufficient information to provide petitioner with adequate notice and the opportunity to defend and protect himself against future prosecution for the same offense.  Any other deficiencies in the indictment alleged by petitioner are solely matters of state law and so not cognizable in a federal habeas proceeding.")).

two amended petition Ground Three claims because the grounds both fail for another, more fundamental reason.

Pluhar forfeited his right to make claims concerning the indictment and his inability to confront one of his victims by entering a voluntary guilty plea.  Indeed, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)(*see* pp. 20-21, *supra*, for further discussion of applicable legal principles).  I recommend Pluhar's duplicate, amended petition Ground Three claims be dismissed as having been waived.

Pluhar does claim, in Ground One, that his guilty plea was not valid because it was not knowingly entered.  As will be discussed more fully below, however, such an argument fails under the particular facts of this case.  Once the Court concludes Pluhar's Ground One claim lacks merit then his duplicate Ground Three claims necessarily fail.  I recommend the two amended petition Ground Three claims be dismissed.

### C.      Ground One

Pluhar's Ground One contends that he did not knowingly plead guilty because the trial court failed to advise him of the maximum penalties he faced upon conviction, in violation of the requirements of Ohio Rule of Criminal Procedure 11(C).  Specifically, Pluhar asserts the trial judge never advised him before he pleaded guilty that he could face an additional felony charge if he violated the requirements of Ohio's sex offender registration law.  Initially, although Pluhar raised this same issue in his direct appeal and in his request for Ohio Supreme Court review, he

never characterized the assigned error as a violation of his federal constitutional rights.  Thus, he failed to fairly present any of his Ground One constitutional claims or to exhaust his state court remedies in respect to such claims.  Because Pluhar can no longer pursue state court remedies for any constitutional violations that occurred in his plea hearing, he has procedurally defaulted any federal due process claim implied in his Ground One claim for relief.

Even though Pluhar merely contends the trial court violated Ohio R. Crim. P. 11, I recommend that the Court find any failure of the state trial court to follow state procedural rules presents no cognizable federal habeas issue unless Pluhar's due process rights were violated as a result.  *Smith v. Anderson*, 632 F.3d 277, 281 (6th Cir.2011), citing *Ramos v. Rogers*, 170 F.3d 560, 564 n. 2 (6th Cir.1999) ("Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process."  (citing *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir.1998))); *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) ("Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process."  (Internal quotation marks omitted)).

"It is especially inappropriate for a federal habeas court so set aside a state court's ruling on an issue of state law [when], as in the present situation, Ohio's appellate courts on direct appeal have already found [the] claim of a violation of [state law] to be meritless."  *Norris*, 146 F.3d at 328.  The same is true here.  To grant Pluhar habeas relief on his Ground One claim, this court would have to effectively overturn the conclusion of the trial court and the Ohio Court of Appeals that Pluhar knowingly, voluntarily and intelligently entered his guilty pleas.  This we cannot do.

The government can show that Pluhar entered valid pleas by producing a transcript of the state court proceedings.  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), citing *Garcia  v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993).  Here, Warden Cook filed a transcript of the pretrial, change of plea, and sentencing hearings.  ECF Doc. 15-2, Page ID# 261.  Thus, a review of the court's proceedings, including the Rule 11 plea colloquy is necessary to determine whether the trial court violated Pluhar's due process rights.

The trial judge began discussing possible plea agreements at the July 29, 2014 pretrial conference.  *Id.*  He began that hearing by reminding Pluhar he was presumed innocent and had an "absolute right to go to trial."  *Id.* at 4, Page ID# 264.  The prosecutor told the court the State was offering to permit Pluhar to plead guilty to rape under indictment Count 1 with the specifications to be dismissed.  The prosecutor advised the court that the sentencing range for Count 1 was three to ten years and that the effect of dismissing the specifications was to remove the potential for a life sentence.  *Id*. at 5-6, Page ID# 265-266.  The State also offered to permit Pluhar to plead guilty to third degree felonies of tampering with evidence (Count 5) and sexual battery (Counts 9 and 12).  *Id.* at 5-6, Page ID# 265-266.  Pluhar was told he faced a prison range of three to twenty-five years.  *Id.* at 5-6, 11, Page ID# 265-266, 268.  The trial court asked Pluhar the following question:

> THE COURT: Do you have questions for [your lawyer] or for the Court about the State's plea offer, about tier 3 sex offender reporting, which in your case would be every 90 days for life or the five years mandatory post-release control?  Do you have questions about any of that based on your discussions with [your lawyer]?
>
> THE DEFENDANT: No, not at this time, your Honor.

Id. at 11-12, Page ID# 268-269.

The parties returned to court on August 6, 2014 for a change of plea hearing.  *Id.* at 13, Page ID# 270.  Pluhar admitted he intended to enter into a plea agreement, and stated he

understood he would give up his right to a trial on any of the charges.  *Id.*  He stated he understood a plea of guilty meant he was making a complete admission of guilt, accepting the facts as alleged and relieving the state of its burden of proof.  *Id.* at 13-14, Page ID# 270-271.

After the prosecutor restated the terms of the plea agreement that had been described in the July 29 pretrial conference, the trial judge stated the Count 1 rape charge was non-probationable and that Pluhar would be required to serve a minimum of three years in prison and possibly more.  *Id.*  The prosecutor stated Pluhar would be classified as a sexual offender under Megan's Law.  The trial judge added that there were three possible classifications: sexually-oriented offender, habitual sexual offender and sexual predator.  *Id.*  The judge stated a sexual predator classification would result in lifetime reporting.  *Id.* at 18-19, Page ID# 275-276.

Pluhar's attorney acknowledged receiving all discovery he had sought and to having discussed with his client the evidence the state would offer against Pluhar if the case went to trial, sentencing possibilities and favorable evidence for the defense.  *Id.* at 22-23, Page ID# 279-280.  Counsel also stated he felt Pluhar understood he'd be subject to mandatory reporting as a sex offender.  *Id.* at 23, Page ID# 280.  Pluhar admitted he'd had a chance to discuss "all of this" with his attorney and that the attorney had answered his questions.  *Id.*

The court explained and Pluhar said he understood the maximum sentences for each count to be included in the plea agreement as well as the maximum consecutive sentence that was possible. Id. at 26-28, Page ID# 283-285.  The trial judge stated

> Now, you will have a hearing prior to sentencing called a House Bill 180 hearing,
> where I will have to decide that classification you fit into based on the crimes
> committed and other factors under Revised Code section 2950.09, I believe.  But
> at a minimum, you'll report every year for ten years to the sheriff's department
> and sign up as – your address and such as a sex offender, depending on the
> decision the Court – it could be lifetime registration every 90 days.  Is that clear?

Pluhar admitted he understood.  *Id.* at 28-29, Page ID# 285-286.  Pluhar was told the sex offender classification "will not be determined until just prior to sentencing."  *Id.*

Pluhar admitted to generally understanding the plea bargain and to being satisfied with the representation of his counsel.  *Id.* at 30, page ID# 287.  He acknowledged he would waive or give up constitutional rights by pleading guilty, including: his right to a jury trial.  *Id.*  He acknowledged his right to an attorney.  He acknowledged his right to compulsory process and to confront the state's witnesses.  *Id.* at 31, Page ID# 288.  Pluhar said he understood his right to require the state to prove the charges beyond a reasonable doubt.  Id.  And he acknowledged his right to proceed to trial while remaining silent.  *Id.*

The trial judge recited the facts underlying, and the elements of, the offenses to which Pluhar would be pleading guilty under the plea agreement.  *Id.* at 32-35, Page ID# 289-292.  And he again told Pluhar – and Pluhar said he understood – he would be required to be classified as a sex offender, subject to reporting requirements that would be determined prior to sentencing, and again stated prison would be required.  *Id.* at 36-37, Page ID# 293-294.

Having been previously told that a plea of guilty constituted a complete admission of guilt and acceptance of the facts alleged, Pluhar pleaded guilty to Counts 1, 5, 9 and 12, and the court found he had knowingly, voluntarily and with full understanding of his rights, entered his change of plea.  *Id.* at 38-39, Page ID# 295-296.  The court found him guilty.  *Id.*

Due Process guarantees under the Fifth Amendment require that "a guilty plea must be both knowing and voluntary."  *Parke v. Raley*, 506 U.S. 20, 28, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992).  This requires an awareness of the "direct consequences" of the guilty plea.  *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (citation omitted).  By contrast, a "trial court is under no constitutional obligation to inform the defendant of all the

27

possible collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

"The Supreme Court has not delimited comprehensively the particular consequences that are

direct or collateral for purposes of evaluating the voluntariness of a guilty plea." *Virsnieks v.*

*Smith*, 521 F.3d 707, 716 (7th Cir. 2008). At a minimum, however, a defendant must be

informed of the waiver of his right against compulsory self-incrimination, to a jury trial, and to

confront his accusers, *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274

(1969); "the actual value of any commitments made to him by the court, prosecutor, or his own

counsel," *Brady*, 397 U.S. at 755 (citation omitted); the elements of the charge to which he is

pleading guilty, *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108

(1976); and his potential sentencing exposure, *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th

Cir. 2009). Here, Pluhar does not contend the trial court failed to advise him of the nature or

elements of the charges to which he would be pleading guilty. And he does not argue that the

court failed to inform him of the potential sentencing exposure. A review of the record reveals

plainly that the trial court satisfied the due process requirements on these points.

Sanctions that are beyond the control and responsibility of the trial court, on the other

hand, are collateral consequences of which the defendant need not be informed before pleading

guilty. *See*, *e.g.*, *Kratt v. Garvey*, 342 F.3d 475, 485 (6th Cir. 2003) (revocation of pilot's

license); *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (deportation); *Brown v.*

*Perini*, 718 F.2d 784, 788-89 (6th Cir. 1983) (parole eligibility). Applying this principle, the

Sixth Circuit has held in unpublished opinions that sex offender registration is a collateral

consequence of a guilty plea. *United States v. Cottle*, 355 Fed. App'x 18, 20-21 (6th Cir. 2009);

*Blumenthal v. Curley*, No. 12-1221, 2013 U.S. App. LEXIS 26018, 2013 WL 7141279 (6th Cir.

2013).

28

*Blumenthal* is instructive.  The Sixth Circuit affirmed the denial of Blumenthal's habeas petition contending that his guilty plea was invalid because he was not informed that he would be required to register as a sex offender.  After finding there was no due process requirement obligating a trial court – in a plea colloquy – to inform a defendant of being required to register as a sex offender, the court found that the state courts' rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law.  There is even greater reason to reach the same conclusion here.  The trial court told Pluhar several times before he pleaded guilty that he would be required to be classified under the Ohio sex offender law and that he would be required to register, potentially for the remainder of his life.  But Pluhar argues that the court erred because it failed to tell him that he could be charged with a felony if he didn't comply with the registration requirements.  Such a possibility was a collateral consequence under Pluhar's own control.  Any consequence that is in the hands of another governmental agency or the defendant himself is by definition collateral.  *Torrey v. Estelle*, 842 F.2d 234 (9th Cir. 1988).  "In determining the voluntariness of a plea and whether it has been made intelligently, the court cannot be required to foresee an accused's future conduct and to predict all possible ramifications thereof."  *Id.* at 236.

I recommend the Court deny Pluhar's Ground 1 claim on the merits.  Even giving him the benefit of the doubt – that he has attempted to raise a non-defaulted federal due process claim in that ground – he has failed to identify any clearly established federal law that that Ohio courts violated or unreasonably applied in concluding that his guilty pleas were valid.

> **D.    Grounds Two; Three (Amended Ground Four); Four (Amended Ground Five)**

As noted above, Pluhar's petition and amended petition are confusing because they restate some of the same grounds using different ground numbers.  Out of an abundance of

caution, I am addressing all of the grounds alleged in both petitions given my uncertainty as to whether Pluhar realized his amended petition superseded and took the place of the original petition.  His Ground Two claim asserted that the trial court's imposition of a maximum sentence on the Count 1 rape charge was not supported by the record and was contrary to law.  Pluhar's Ground Three and Ground Four claims (duplicated in Grounds Four and Five of the amended petition) asserted that the trial court erred by imposing near maximum, consecutive sentences for the Count 9 and Count 12 sexual battery charges and consecutive sentences regarding the rape and sexual battery charges.  I recommend the Court dismiss each of these grounds because they present only noncognizable, non-federal claims that may not be addressed in a federal habeas proceeding.

Initially, although Pluhar raised each of these grounds in the Ohio Court of Appeals and in his request for Ohio Supreme Court review, he never characterized the claims as violations of his federal constitutional rights. [12]  Thus, he failed to fairly present and exhaust any state court remedies for any potential federal constitutional violations implicit in those grounds.  Because Pluhar can no longer pursue such claims in state court, he has procedurally defaulted them for the reasons explained at pp. 15-17 *supra*.  Similarly, Pluhar has not claimed in Grounds Two, Three (Amended Ground Four), or Four (Amended Ground Five) of his habeas petitions that the Ohio courts violated his federal constitutional rights.  Instead, he has contended Ohio courts failed to comply with the requirements of Ohio sentencing laws.

---

[12] Pluhar's direct appeal brief did argue that the trial court violated the U.S. Constitution's Double Jeopardy Clause and imposed "cruel and unusual punishment" (prohibited by the Eighth Amendment) when it considered the conduct for which Pluhar was to be punished under the Count 5 evidence tampering charge (blaming the victim's brother) when determining the sentence on the Count 1 rape charge.  Pluhar has not advanced, and has therefore abandoned, this argument in this federal habeas proceeding.

As discussed more fully at pp. 19-20, *supra*, to the extent claims asserted in a federal habeas petition allege purely state-law violations, they are not cognizable and must be dismissed on that basis unless the state court ruling violates a fundamental federal constitutional right.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Furthermore, "[w]ide discretion is accorded a state trial court's sentencing decision.  Claims arising out of that decision are not generally cognizable upon federal habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law."  *Lucey v. Lavigne*, 185 F.Supp.2d 741, 745 (E.D.Mich.2001).

Because Pluhar alleges only errors of state sentencing law in Grounds Two, Three (Amended Ground Four), and Four (Amended Ground Five), these claims are not cognizable on habeas review.  *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) ("federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures."); *Draughn v. Jabe*, 803 F.Supp. 70, 81 (E.D.Mich.1992) (same).  Moreover, as noted by the Ohio Court of Appeals, "The record in this case contains a lengthy and thorough recitation of the [trial] court's consideration of appropriate sentencing factors under R.C. 2929.11 and 2929.12.  The trial court imposed sentences that are commensurate with [Pluhar's] crimes."  ECF Doc. 15-1, Page ID# 227-228. *State v. Pluhar*, No. 102012, 2015-Ohio-3344, ¶ 16, 2015 Ohio App. LEXIS 3257 (Eighth Dist. App).  In regard to the issues Pluhar now raises in Grounds Two, Three (Amended Ground Four), and Four (Amended Ground Five), the Ohio Court of Appeals concluded:

31

Essentially, appellant takes issue with the discretion exercised by the trial court. However, "as long as the trial judge properly considered all mitigating factors, it was within her discretion to weigh them in any manner that she [sees] fit and to assign such weight to each factor as she [thinks] appropriate." *State v. Belew*, 140 Ohio St. 3d 221, 2014-Ohio-2964, 17 N.E.3d 515, ¶ 18, Lanzinger, J., dissenting, citing *State v. Noling*, 98 Ohio St. 3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 130 ("the weight, if any, to assign a given factor is a matter for the discretion of the individual decisionmaker"); [*State v. Booker,* 8th Dist. Cuyahoga No. 101886, 2015-Ohio-2515, ¶¶ 9-11].

Appellant also claims the trial court's considerations of these factors are contrary to law.  However, a sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range."  *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10, citing *State v. Kalish*, 120 Ohio St. 3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18.  Appellant asks this court to substitute its judgment for that of the trial court's; something we will not do.  *See* [*State v. Martinez*, 8th Dist. Cuyahoga No. 101474, 2015-Ohio-1293, ¶ 30].

*Id.* at Page ID# 230, *State v. Pluhar*, at ¶¶ 19-20.  It is evident that the Ohio Court of Appeals reviewed and approved – solely on a state-law basis – the trial court's application of Ohio sentencing law.  This court not only must defer to the state courts' determinations of Ohio law, we cannot upset such determinations because no federal issue is involved.  The Sixth Circuit's decision in *Lint v. Prelesnik*, 542 Fed. App'x 472, 480 (6th Cir. 2013) succinctly summarizes why we are now powerless to review these claims on the merits:

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)); *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975)).  This court has previously stated, "[p]rinciples of comity require federal courts to defer to a state court judgment on the issues of state law." *Israfil v. Russell*, 276 F.3d 768, 771, 18 Fed. App'x 278 (2001)(citing *Engle v. Isaac*, 456 U.S. 107, 128-29, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)).

Finally, Pluhar has not argued or identified any core federal constitutional violation that is necessarily implicit in the Ohio courts' determinations in regard to Grounds Two, Three

(Amended Ground Four), and Four (Amended Ground Five).  As the warden has argued, Pluhar has no federal constitutional right to appeal his sentence.  *United States v. Nation*, 352 F.3d 1075 (6th Cir. 2003); *Jones v. Warren*, No. 2:06-CV-11113, 2010 U.S. Dist. LEXIS 114664 at * 11 (E.D. Mich. Oct. 28, 2010).  I recommend the Court dismiss these grounds because they raise only noncognizable state law claims, and any implicit federal claims have been procedurally defaulted because they were never fairly presented in the state courts and Pluhar has procedurally defaulted them.

### E.     Grounds Six and Seven

Pluhar predicates his Grounds Six and Seven on his contention that the state filed the 2014 indictment beyond the six year statute of limitations that was in effect at the time the incidents for which he was criminally charged occurred.  In Ground Six, he asserts that his trial counsel was ineffective for "failing to discover" that the charges were time-barred.  And in Ground Seven he contends the charges were filed beyond the statute of limitations.

Pluhar did not raise these grounds in his direct appeal to the Ohio Court of Appeals or in his memorandum in support of jurisdiction filed in the Ohio Supreme Court.  Instead, he attempted to reopen his direct appeal based on his contention that his appellate counsel was ineffective for not raising ineffective assistance of trial counsel and the statute of limitations bar on direct appeal.  The Ohio Court of Appeals denied the application, and Pluhar did not appeal the ruling to the Ohio Supreme Court.  Pluhar is now beyond the deadline for pursuing an appeal to Ohio's highest court.

Pluhar's failure to raise his Ground Six and Seven claims on direct appeal and his decision not to seek Supreme Court of Ohio review of the court of appeals ruling denying his Rule 26(B) application means he never fairly presented and exhausted his state court remedies

for those claims. "The highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement in 28 U.S.C. § 2254(b)(1)(a) "does not require pursuit of a state remedy where such pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981). Because Pluhar can no longer pursue state court remedies related to the alleged ineffectiveness of his *trial* counsel, they are technically "exhausted," but he has procedurally defaulted them. *Woodford v. Ngo*, 548 U.S. 81, 93, 122 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006); *Snyder v. Marion Corr. Inst.*, 608 Fed. App'x 325, 327 (6th Cir. 2015). Pluhar has offered no cause or prejudice explanation or argument to avoid his procedural default of these claims.

The court is not required to dispose of Pluhar's Ground Six and Seven claims on the basis of procedural default. When, as here, the claims plainly lack merit, they can be addressed on that basis. First, the Ohio Court of Appeals addressed the claim that Pluhar's appellate counsel was ineffective in its journal entry denying his Rule 26(B) application to reopen his direct appeal. The court correctly noted that such claims are judged under the two-part test established in *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): "In order to establish a claim of ineffective assistance of appellate counsel, Pluhar is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice." (Citations omitted.) ECF Doc. 15-1, Page ID# 257. The court noted that it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* Rather than considering the strategic choices that Pluhar's appellate attorney may have made, the court of appeals zeroed in on Pluhar's basic contention that the statute of limitations had expired. Id. at Page ID# 258.

Essentially, Pluhar argues that using the dates – as alleged in the indictment – of the offenses to which he pleaded guilty: June 20, 1998 (Counts 1 and 5), February 21, 1999 (Count 9) and August 4, 1999 (Count 12) – the statute of limitations under Ohio Rev. Code § 2901.13 was six years at the time of the offense conduct.  He argues the April 23, 2014 indictment was filed too late.  The Ohio Court of Appeals dealt with Pluhar's arguments succinctly:

> {¶5}   Effective March 9, 1999, the General Assembly amended R.C. 2901.13 to provide that the statute of limitations for certain felony offenses, including rape (R.C. 2907.02) and sexual battery (R.C. 2907.03), was 20 years.  The legislative history to the amendment states that:
>
>> Section 2901.13 of the Revised Code, as amended by this act, applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act.
>
> {¶6}   Thus, if the statute of limitations had not expired by March 8, 1999, an offender is subject to prosecution under the amended version of 2901.13.  *See State v. Herron*, 8th Dist. Cuyahoga No. 91362, 2009-Ohio-2128.  Courts throughout the state of Ohio have uniformly upheld the constitutionality of this retroactive extension of the statute of limitations.  *State v. Steele*, 155 Ohio App.3d 659, 2003-Ohio-7103, 802 N.E.2d 1127 (1st Dist.).
>
> {¶7}   In the case sub judice, the offenses of rape and sexual battery occurred between June 20, 1998 and August 4, 1999.  Thus, the applicable statute of limitations [for] the offenses of rape and sexual battery are 20 years.
>
> {¶8}   In addition, the plea of guilty entered by Pluhar waived any claim that the convictions of the offense of tampering with evidence was time-barred by a statute of limitations of six years.  *State v. Brown*, 43 Ohio App.3d 39, 539 N.E.2d 1159 (1st Dist. 1998); *State v. Keinath*, 6th Dist. Ottawa No. TO-11-032, 2012-Ohio-5001.  Pluhar's two proposed assignments of error lack merit, and we find he has failed to establish a claim of ineffective assistance of appellate counsel.

ECF Doc. 15-1, Page ID# 258-259.

Notably, the two proposed additional assignments of error Pluhar sought to raise in his Rule 26(B) application to reopen his direct appeal are identical to his Ground Six and Seven claims in his habeas petitions.  The Ohio Court of Appeals found Pluhar had not established a claim of ineffective assistance of appellate counsel because there was no merit to his claim that

the statute of limitations for rape and for sexual battery had expired by the time he was indicted. Thus, there was no statute of limitations defense on the rape and sexual battery charges that his trial counsel failed to "discover." Further, the court, relying on state common law, found that Pluhar's guilty plea waived any claim that the Count 5 tampering with evidence charge was time barred. The Ohio Court of Appeals effectively found there was no evidence that Pluhar's trial or appellate counsel fell below an objective standard of care. Absent that, no claim for ineffective assistance of counsel can succeed.

Even if trial or appellate counsel should have argued the statute of limitations on the Count 5 evidence tampering charge had expired, Pluhar cannot meet the prejudice prong of the *Strickland* ineffective assistance of counsel test. It is undisputed that sentence he was given for that offense was ordered to be served concurrently with the sentence imposed on the Count 1 rape charge. Moreover, Pluhar has not predicated his Ground Six and Seven claims on the impact upon him of the evidence tampering conviction.

Pluhar contends he has shown the *Strickland* prejudice prong because counsel's failure to discover the statute of limitations defense kept him from being able to argue the trial court lacked subject matter jurisdiction over his case. ECF Doc. 11, Page ID# 62. As demonstrated above, however, this argument misses the mark. The trial court plainly had subject matter jurisdiction over the rape and sexual battery charges because those offenses had twenty year statutes of limitations and the state pursued the charges less than twenty years after the oldest of the offenses was committed. All of Pluhar's arguments on this point ignore the modification of the statute of limitations by action of the Ohio General Assembly in 1989 (long before Pluhar committed his crimes) to be effective on March 9, 1999.

The Ohio Court of Appeals made a judgment of state law concerning Pluhar's statute of limitations argument.  And it adjudicated the merits of Pluhar's federal ineffective assistance of counsel claim.  This court has no authority to interfere with these rulings.  On the statute of limitations interpretation (Ground Seven), only a noncognizable issue of state law is involved.  On the ineffective assistance of counsel adjudication (Ground Six), we cannot interfere unless the state court decision was contrary to or an unreasonable application of established federal law as determined by the United States Supreme Court – in this case *Strickland v. Washington*.  28 U.S.C. § 2254(d).  Pluhar has identified no such error.

Although not expressly articulated in the wording of Pluhar's Ground Seven claim for relief, the argument portion of his amended petition asserts the sixteen year delay between his offenses and the indictment amounted to such severe, prejudicial pre-indictment delay as to constitute a violation of the "Due Process Clause of the Fifth Amendment."[13]  In support, Pluhar cites *United States v. Lovasco*, 97 S.Ct. 2044 (1977) and *United States v. Marion*, 92 S.Ct. 455 (1971) by citation, not by name, contending the pre-indictment delay "caused substantial prejudice to his right to a fair trial, particularly if the delay was an intentional device to gain tactical advantage, as is indicated by the state re-indicting this Petitioner."  ECF Doc. 11, Page ID# 64.

Although, as Pluhar's case citations make plain, pre-indictment delay can violate a criminal defendant's federal constitutional rights, this court cannot address the claim.  First, Pluhar never raised this issue in any of his state court filings.  As with some of his other claims, discussed above, his failure to fairly present the federal constitutional issue implicit in pre-

---

[13] Because Pluhar complains about state government action, the claim actually would arise under the Fourteenth Amendment.  Because Pluhar is a *pro se* petitioner, and because the two claims are evaluated under the same standards, the court will disregard this error in Pluhar's argument.

indictment delay to the state courts in order to seek the remedies available there means the claim was not exhausted.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). To the extent Pluhar can no longer seek state court relief because of state *res judicata* law or the expiration of state filing deadlines for direct appeal or to obtain post-conviction relief, the claim may be deemed exhausted but procedurally defaulted.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006), and see discussion at pp. 15-17, *supra*.  Second, by pleading guilty, Pluhar waived any pre-guilty plea constitutional claims, including any claim of prejudicial pre-indictment delay.  *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and see discussion at pp. 20-21, *supra*.

I recommend the Court deny Pluhar's Ground Six and Seven claims for relief.

## VII.  Summary of Findings and Recommendations

Pluhar's claims all fail as a matter of law, for the following summarized reasons:

**Ground One**: Lack of merit.

**Grounds Two**, **Three** (**amended petition Ground Four**), **Four** (**amended petition ground Five**): No cognizable federal constitutional issue raised.

**Amended petition duplicate Ground Threes**: Claims not exhausted; procedurally defaulted; and waived by trial court guilty plea.

**Ground Five**: Lack of jurisdiction over the claim because Pluhar not in custody as a result of the challenged state court action.

**Grounds Six** and **Seven**: Claims not exhausted; procedurally defaulted; Ground Seven waived by guilty plea.

## VIII.  Certificate of Appealability not Recommended

### A.     Legal Standard

As amended by the AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . .

only if the applicant has made a substantial showing of the denial of a constitutional right."  28

U.S.C. § 2253(c)(2). Although the statute does not define what constitutes a "substantial

showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than

the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.

Rather, the courts that have considered the issue have concluded that "'[a] substantial showing

requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a

court could resolve the issues (in a different manner); or that the questions are adequate to

deserve encouragement to proceed further."'"  *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir.

1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v.

Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484

(2000).  The statute requires that certificates of appealability specify which issues are appealable.

28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts,

28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. §

2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of

appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny

the certificate of appealability at the time of its final adverse order, a recommendation regarding

the certificate of appealability issue is included here.

**B.    Analysis**

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is

two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at

least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.  I have recommended that most of Pluhar's claims be dismissed on procedural grounds.

If the court accepts my recommendations, Pluhar will not be able to show that the Court's rulings on his claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

## IX.     Recommendation

I recommend that the Court DENY Pluhar's petition for writ of habeas corpus (ECF Doc. No. 1) in its entirety.

Dated: September 13, 2018

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).